Silvers and Brittin adsm. Reynolds.

---

JOHN SILVERS AND HENRY M. BRITTIN ADSM. ELIHU C. REYNOLDS.

In debt on judgment by confession on warrant of Attorney. Motion to open judgment, &c.

A Judgment against two persons, by confession on warrant of attorney, may be set aside as to one of them, (it appearing by affidavits that nothing is due and owing from him to the plaintiff,) and stand good against the other.

A debtor may be discharged from his debt, without a technical release, even on payment of a less sum than is due, by a parol agreement executed, or cancelling the instrument the evidence of the debt.

*Vroom* for defendants.
*Armstrong* for plaintiff.

FORD, J. Judgment was entered up against these defendants, the 16th December, 1836, by confession on warrant of Attorney, upon the joint and several notes to the plaintiff, for two thousand four hundred dollars, dated 14th May, 1835, as collateral secu-

rity for three other notes of theirs to the plaintiff, of eight hundred dollars each, payable successively in August, 1836, December, 1836, and January, 1837; with liberty to enter the judgment if either of these notes should not be paid at maturity. Each defendant had obtained a rule on the plaintiff to shew cause why this judgment, as to himself, should not be set aside, or opened so as to allow him to plead.

1, A judgment against two persons *by confession on warrant of attorney*, may undoubtedly be set aside as to one of them, and stand good against the other. It was so done in the case of *Motteaux* v. *St. Aubin and Davis*, 2 *W. Black. Rep.* 1133; where it was moved to set aside the judgment against St. Aubin only, and to strike his name out of the warrant of attorney which he had signed, with Davis his security; on affidavits shewing he was not eighteen years old. The court said this is not a reversal by writ of error, but vacating a warrant against an infant, for imposition; that Lord Hardwick said, relief might be given on warrant of attorney if unduly obtained, and that the courts had always followed that opinion. Let the rule be made absolute. So in the case of *Girard* v. *Basse and Sayer*, 1 *Dallas*, 119, Sayer had signed the warrant of attorney for himself and partner in this manner, "John Abraham Sayer for Basse and Sayer," in the absence of his partner, and without any special authority from him. The court considered the warrant good against Sayer who had sealed it, and said, " we give leave to strike out the name of Basse, and the judgment against Sayer will remain." If the present case was before us on a writ of error, I do not say that we could reverse the judgment as to one defendant, and affirm it as to the other; but courts of law have immemorially exercised an equitable power over judgments entered by their authority on warrants of attorney, by confession.

2, I am clearly of opinion that we ought to grant a rule to strike the name of Henry M. Brittin out of this record, because it fully appears, by the affidavits, that he owed the plaintiff nothing, at the time of entering the judgment; and if the plaintiff, instead of suppressing that fact, had made it known to the judge, no fiat for the judgment would have been granted. What is now shown by the affidavits, is not denied, that prior to the entry of the judgment, the plaintiff had agreed with the defendants, to

take Silvers alone for the debt, and discharge Brittin from it, if he, Brittin would pay down five hundred dollars towards it; in pursuance of which agreement, Brittin actually paid him the five hundred dollars, and the plaintiff immediately tore Brittin's name from each of the three notes, and delivered up to him the signatures; after which the plaintiff applied for judgment against him. It is said that five hundred dollars cannot be a satisfaction for eight hundred dollars, in law; that an agreement to accept a less in satisfaction of a greater sum of money, is void on the face of it, and can never be enforced without a technical release. It is true that the law will not enforce an unexecuted agreement of that kind; but where such an agreement has been *executed*, as by giving a release of the larger sum, it is then valid and available. Now this case is as strong as that of a release. It was an *executed* agreement, for by voluntarily tearing the signatures from the notes, it extinguished them forever, as effectually as a release of them; and after this, it was an imposition on the court, to apply for judgment against Brittin. Therefore let a rule be entered, to strike the name of Henry M. Brittin out of the record, so that it may remain a judgment against John Silvers, only.

3. But the whole of this debt ought not to be raised on the execution against Silvers, for it evidently appears, by the affidavits, and is not at all contradicted, that the five hundred dollars paid by Brittin, for Silvers, was in part of the debt, and was so received by the plaintiff. Furthermore, the affidavits tend to show that the whole debt has been allowed to the plaintiff, in a settlement by arbitration between him and Silvers; but those documents are not fully before us. Moreover, the affidavits present a probability that after deducting the $500, a considerable part of the residue has been paid, though they do not enable us to say how much of it. Therefore let the judgment be opened so far, that the plaintiff declare upon his note, and let Silvers plead payment, giving notice with it, of any proper set-off he may have against the debt, and any other bar proper to be pleaded, so that it may be ascertained how much is justly due and owing to the plaintiff; and in the mean time, let the judgment and execution against Silvers, stand as security for what may be found due to the plaintiff.

The CHIEF JUSTICE and WHITE, J., concurred.

DAYTON, J.  A judgment was entered in this court, before the Chief Justice, on the 16th Dec., 1836, for $2,400, upon a note of hand for that amount, drawn by Silvers and Brittin, jointly and severally to Reynolds, by virtue of a warrant of attorney, (likewise joint and several) for that purpose; and execution issued thereon, returnable February Term, 1837.  In the term of February, 1838, two rules to show cause why the judgment should not be set aside, were entered by different attorneys.  One on behalf of Silvers, one of the defendants, another on behalf of Brittin, the other defendant and Abraham Suydam, an execution creditor.  Affidavits have been taken by the parties respectively, from which, without touching on controverted matters, facts which, I think, cannot be disputed, may be gathered, sufficient to dispose of the question before the court.

There is no doubt that the $2,400 note, together with the warrant of attorney to confess judgment, were given merely as collateral security for the payment of three other notes of $800 each, falling due at different dates.  That Reynolds subsequently agreed with Brittin, that if he would pay off one of these three notes, or the sum of $500, thereon, (which, does not distinctly appear, nor is it at all material) he would discharge him absolutely from all further liability, by tearing his name off said three notes.  *That Brittin did thereupon pay the $500, and Reynolds actually tore his name from said notes.*  Subsequent to this, however, Reynolds went before the Chief Justice, and procured judgment to be entered on the $2,400 note, against both Silvers and Brittin.  These facts, I think may be assumed as proved.

I.  If this court should feel satisfied that the judgment in this case was fraudulently entered against Brittin, it would be waste of time to attempt by argument or authority to prove that it is our duty to set it aside.

That Brittin has a right to question the judgment entered against himself, no man can doubt.  The release of errors in the warrant of attorney, extending as it does to errors in the entry and form of the judgment only, does not, of course, affect the case.  So too, it has been ruled in this, as well as other courts, that an execution creditor, under certain circumstances, may question a judgment against his debtor.  6 *Hals.* 110, 295; 1 *South.* 351; 1 *Green*, 263; 3 *Green* 50.

That the entry of judgment against Brittin was fraudulent in law, is most manifest. The $2,400 note being given, not as an original evidence of debt, but merely as collateral security for other notes, became void and inoperative as soon as those notes were cancelled or paid. This is one of those plain propositions upon which, argument is offensive.

But it is objected that Brittin was not discharged in law; because the sum paid, was less than the amount due, and there was no technical release. *Co. on Litt.* 212 *b ;* 5 *Coke's Rep.* 117 ; 4 *Mod.* 89 ; 1 *Stra.* 426 ; 5 *East,* 230 ; 2 *J. R.* 448, are cited as authorities, but they do nothing more than sustain the general position assumed, to wit : that a payment of a less sum in discharge of a greater, is inoperative without a technical release under seal, as against an outstanding claim. That where the obligation to pay, is still in the hands of the obligee, nothing short of a technical release is a good plea in bar of the original claim.— But if the instrument be destroyed for a lesser sum than its face, this is tantamount at least to a technical release ; and in its practical operation, is certainly a safer and better discharge. If the release be lost, the defence may be gone ; but if the evidence of indebtedness, be itself wilfully destroyed by the holder, the debtor is irrevocably discharged. A deed, may, among other modes, be avoided and rendered of no effect, " by breaking off or defacing the seal." 2 *Black. C.* 312 ; 5 *Rep.* 23. *A fortiori,* may a simple contract be avoided by tearing off the signatures. And in the case of *Dearborn* v. *Cross,* 7 *Cow.* 48 ; it was held that even a parol agreement *executed,* rescinding a bond, was a good release, even though the bond was not given up or cancelled. We are not required to go this length ; because here, the notes were, as against Brittin, cancelled, and I cannot doubt that, *ipso facto,* he was discharged absolutely from all liability thereon.

The judgment against him, was therefore fraudulent in law, and must be set aside.

II. The only remaining question is as to the effect of this proceeding upon Silvers, the other defendant.

I at first thought that the name of Brittin was torn from the notes in the absence and without the knowledge or assent of Silvers. Had this been so, I have no doubt it would have been a full and complete discharge of both, as was contended for by

counsel.   It would in the first place, have been a most important alteration in the instrument, by the holder, and this will avoid even a deed.   2 *Black.* 312.   And in the second place, the absolute discharge of one of several obligors, whether they are bound jointly, or jointly and severally ; discharges all the others. 7 *J. R.* 207 ; 9 *Cow.* 37 ; 9 *Wend.* 336 ; *Co. Litt.* 232 *a.* note, 144 ; 2 *Saund.* 48 *a ;* 2 *Green,* 102.   But it is needless to adjudicate upon a state of facts, which does not exist.   By a more critical examination of the evidence, I am satisfied that the name of Brittin was torn off in virtue and ·pursuance of an assent and express agreement with Silvers for that purpose.   This has been held to alter the rule of law.

Still, a common law judgment is an entirety, and although we deal with these judgments entered on bond and warrant of attorney, in a more summary mode, I have felt some difficulties under our statute, in the way of affirming this as to one, and reversing it as to the other.   But as we have exercised a species of equity-power over them ; and substantial justice will be best attained in this way, I concur upon this point, in the view taken by Justice Ford.

NEVIUS, J., having been of counsel, in the cause, gave no opinion.

*Motion to strike out Brittin's name, granted ; and judgment opened as to Silvers.*